19087

Juanita Wideman WILLIAMS, Appellant, v.
Thomas Howard WILLIAMS, Sr., Respondent

(176 S. E. (2d) 157)

*Messrs. Thomas D. Broadwater and Matthew J. Perry,* of Columbia, *for Appellant,*

*Messrs. Allen, Jones & Pruitt,* of Anderson, and *Frank K. Sloan,* of Columbia, *for Respondent,*

494

July 27, 1970.

BRAILSFORD, Justice.

In this divorce action, commenced by the wife in the County Court of Anderson County, the court denied the relief sought by the complaint but awarded a divorce and custody of the couple's young son to the husband. The wife has appealed, charging that the court erred in failing to sustain her allegation that the husband had been guilty of physical cruelty toward her, erred in finding her guilty of desertion, and erred in awarding custody of the child to the husband.

The parties were married in 1958. She was a school teacher and he a substantial farmer of Anderson County. The child was born August 1, 1960. Thereafter, the wife resided with her husband and son during the school term, but attended school away from home each summer, usually at Hampton Institute in Hampton, Virginia. During these summers the child was cared for by his paternal and maternal grandmothers and a paternal aunt, all of whom resided in the neighborhood, and by his father.

The wife's complaint specified only one incident of physical cruelty, which allegedly occurred on June 12, 1966, upon her return home from an orientation program at Winthrop College, which followed a trip to Hampton Institute for commencement exercises. On this occasion, she told her husband that she wished to accept a job at Winthrop College as

an instructor in the "headstart program," which would require her to leave home again immediately. According to her testimony, he remonstrated, stating that she should stay at home with him and the child. She testified that he then undertook to force himself upon her, quoting from her testimony, "(He) grabbed me without any regards to my feeling or my physical wish, he grabbed me for sex relationship and he does this all the time without regards to my physical condition, regardless to my wishes and he did this at this time and of course, I told him that I was very tired from the drive and of course this would be later on if I could just get away and rest. He forced me on the bed and he choked me and he just dragged me down the hall after this incident and after this I was very frightened. I left home.

\* \* \* \* \* \*

"Q. All right, did you immediately seek medical attention?

"A. Yes, Sir. I did."

Plaintiff testified that she went to four different physicians, was hospitalized on several occasions and finally underwent throat surgery, all as a result of her husband's choking her. However, she failed to offer any medical testimony in substantiation of these charges. Instead, the surgeon who operated on her was called as a witness by the husband. He testified that the wife's preoperative symptoms (loss of voice, etc.) were caused by a small lesion on the left vocal cord, which he described as a common condition in singers, preachers and others who use their voices extensively. He found no evidence of trauma and testified that external force could not have caused the lesion, or injured the vocal cords in any way, without cracking the cartilaginous walls of the larynx by which the cords are protected from external injury. He stated that such a rupture of the cartilage would produce serious consequences, could not escape diagnosis and did not occur in this case.

The husband denied having choked his wife or physically abused her in any manner. His version of what took place between them on this occasion is flatly contradictory of her version and is far more convincing. It is quite understandable that the court discredited her testimony, which, at best, grossly overstated her case, and believed his. There was no error in concluding that the wife failed to sustain the burden of proving her entitlement to a divorce on the ground assigned.

It is undisputed that the wife left the family home in June, 1966, against the husband's consent and has continuously absented herself therefrom despite his efforts to induce her to return. She is clearly guilty of desertion unless, as she contends, the husband was guilty of such cruel treatment as to justify her departure. The court's conclusion that she was not justified in leaving appears to be supported by the preponderance of the evidence. There was no error in finding the wife guilty of desertion.

This action was commenced in July, 1966. The husband timely filed an answer denying the allegations of the complaint and seeking custody of the minor child. After the lapse of some fifteen months, during which no hearing on the merits had been held, the husband filed an amended answer and counterclaim, in which, upon appropriate allegations, he sought a divorce from the wife on the ground of desertion for more than one year. The wife now charges that the court erred in allowing this amendment because the effect of it was to permit as a counterclaim a ground of divorce which was not available at the commencement of the action. Suffice it to say that no objection to the amendment was voiced in the lower court on this or any other ground. Instead, the wife filed a reply to the merits of the controversy. The issue was tried on the merits and resolved against the wife. Having pled and gone to trial on the merits, she has no standing to urge here, for the first time, error in the allowance of the amendment.

Finally, the wife charges that the court erred in not awarding custody of the minor child to her. It appears that upon the commencement of the action an *ex parte* order was issued awarding custody to the wife. This order is not included in the record on appeal. However, the record does contain a badly garbled paragraph purportedly read from the order during cross-examination of the husband. Apparently, the gist of it was that custody was awarded to the wife, with leave to the husband to apply for modification or rescission of the order within twenty days. The wife insists that since no motion was made within the time allowed, the order became permanent, subject only to review for change of conditions, as to which no showing was made. This is a misconception. Regardless of its form, about which we are imperfectly advised, this *ex parte* order was effective only *pendente lite*. It could have no bearing on the award of custody after the hearing on the merits.

The wife further contends that the court erred in not concluding that the best interest of the child would be served by awarding custody to her. She moved to Columbia after the 1966 separation, where she has a good position as a school teacher. She has purchased a more than adequate home in a desirable residential section. Her son lived with her and attended a Columbia school during the 1966-67 school year. The parties apparently maintained a reasonably friendly relationship, and the son, who had a strong preference for living on the farm with his father, was allowed to visit there from time to time. During the summer of 1967, these visits apparently ripened into a change of custody with the son residing with his father and occasionally visiting his mother. The record, which is replete with obvious errors and omissions, is vague and indefinite as to just how this came about. We do know that at the commencement of the school term the father enrolled his son in a nearby Catholic school, which was the choice of both parents prior to their separation. Since then, he has continued to reside with his father and attend this school.

The testimony in this case was taken in September, 1967, only a short time after the child had commenced living with his father and attending school in Anderson County. He has continued in the custody of his father for nearly three years since the testimony was taken. We have no information as to how this arrangement has served the welfare of the child. Despite some testimony which tends to disparage the fitness of both parents as custodian of the child, we think it apparent on the entire record that both love the child and are suitable persons to be entrusted with his care and custody. Even if we should disagree with the trial judge as to which parent should have been awarded custody when the case was heard, we would be reluctant, absent contemporary testimony as to the welfare of the child, to disturb an arrangement which has continued for nearly three years. Suffice it to say that we find no compelling reason for us to now substitute our judgment for that of the trial judge, who had the opportunity to hear and observe the parties on the witness stand. The trial court is always open to review the question of custody, and to make such disposition thereof as in the court's judgment will serve the best interest of the child.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.